```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

DARNELL JOHNSON,              )
        Petitioner,            )
                               ) Civil Action No. 06-57
        v.                     ) District Judge Joy Flowers Conti
                               ) Magistrate Judge Amy Reynolds Hay
RAYMOND FOBINA,                )
        Respondent.            )

## REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

## II. REPORT

Petitioner, Darnell Johnson, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, wherein he challenges his convictions of Murder in the Second Degree and related robbery, assault, criminal conspiracy, and firearms violations. In his Petition, he raises the following claims for relief.

1.  Denial of effective assistance of counsel: conflict of interest between trial and appellate counsel from same pubic defenders office.

2.  Denial of right to fair trial when forced to stand trial with co-defendant whose defense was mutually antagonistic and irreconcilable with alibi defense; wrongful denial of severance motions.

3.  Unlawful search and seizure of evidence obtained pursuant to illegal arrest warrant issued by deputy coroner.

Petition for Writ of Habeas Corpus (Doc. 1).

A.  <u>Relevant Facts</u>

The relevant facts, as set forth by the trial court, are as follows.

> At approximately 2:43 a.m. on June 15, 1997, City of Pittsburgh Police received multiple calls through its 911 dispatcher stating that a shooting had occurred. Officers were dispatched to 2264 Wilner Drive, in the East Hills section of Pittsburgh. The officers were able to confirm that Charles Allen had been shot and his brother, Cheyenne Allen was bleeding from an injury he sustained to the right side of his face. Cheyenne Allen testified that Darnell Johnson, also known as Weedel, had pistol whipped him on the right side of his face and fatally shot his brother Charles. He said that he and his brother Charles were part of a group who were playing craps in the vicinity of 2264 Wilner Drive. Cheyenne was functioning as the house man in the craps game, and his brother, Charles, was one of those who were rolling the dice. Unexpectedly, Cheyenne was struck by Darnell Johnson on the right side of his face with a handgun. Co-defendant, Julian Brown, also known as Craig Easley, then demanded of Charles "Give me the fucking money". After Charles relinquished the money he had on his person, Darnell Johnson claimed Charles was holding back, and he shot him. Cheyenne struggled to his feet and attempted to run to safety and secure help when Darnell Johnson pointed the handgun at him and pulled the trigger. Fortunately, the gun did not fire.

Commw. Ex. 16 at 2-6 (internal record citations omitted)(Doc. 9).

Petitioner's case was joined for trial with his co-defendant, Julian Brown. On November 17, 1997, Petitioner's counsel filed a Motion to Sever. Following a hearing held April 14, 1998, before the Honorable Lawrence J. O'Toole, the motion was denied. On May 11, 1998, following a jury trial in the Court of Common Pleas of Allegheny County, Petitioner was found guilty of murder in the second degree as well as one count each of

robbery, aggravated assault, REAP and VUFA and was sentenced to the mandatory term of life imprisonment plus a consecutive aggregate term of from 13 ½ years to 27 years incarceration. After unsuccessfully seeking relief from his convictions in state court on direct appeal and in post-conviction proceedings pursuant to the Pennsylvania Post-Conviction Relief Act (PCRA), the Petitioner filed with this Court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 wherein he raises the claims set forth above.

B. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

It appears that the Petitioner has presented some of his claims to the Pennsylvania courts through his direct appeal and post conviction proceedings.  Moreover, it is clear that

3

Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to any of his claims. Accordingly, this Court will review the Petitioner's claims under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement.

C.   Standard of Review

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations.  28 U.S.C. § 2254.  Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), Justice O'Connor, writing the opinion of the Court for Part II, discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within section 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 411-13. *See also* <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

Where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).

    D.    <u>Ineffective Assistance of Counsel - Conflict of Interest</u>

Petitioner's first claim asserts ineffectiveness of trial counsel and appellate counsel due to the fact that they were from the same office, the Public Defender's Office, and therefore, could or would not raise the lower counsel's ineffectiveness. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993) (*quoting* <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984)).  *See also* <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687. The first prong of the <u>Strickland</u> test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>Strickland</u>, 466 U.S. at 688.  The second prong requires a defendant to demonstrate that counsel's errors

deprived him of a fair trial and the result was unfair or unreliable.  Strickland, 466 U.S. at 689.

When a petitioner alleges that trial counsel experienced a conflict of interest in representing him, he must demonstrate that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980).  Indeed:

> the possibility of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

Id. at 350.  See also Strickland v. Washington, 466 U.S. 668, 696 (1984).

In order to prevail on a conflict of interest claim, a defendant must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict.  Burger v. Kemp, 483 U.S. 776 (1987).  In this regard, Petitioner has the burden of setting forth sufficient facts to support each claim.  Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition.  Bald assertions and conclusory allegations do not afford a sufficient ground to

provide habeas relief.  Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987).

Here, Petitioner has not set forth any facts to substantiate his conflict of interest claim.  Thus, he is not entitled to habeas corpus relief as to this claim.  *See* Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 & n. 12 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

    E.   Failure to Grant Severance

Petitioner's next claim is that the trial court erred by refusing to grant his motion for severance from trial with his co-defendant Brown.  Specifically, Petitioner claims that he was prejudiced by joint trials because his alibi defense was antagonistic to co-defendant Brown's statement that Petitioner was the shooter.

The Supreme Court has instructed that "improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  United States v. Lane, 474 U.S. 438, 446 n. 8 (1986).  The Court further has instructed that:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about

>     guilt or innocence.  Such a risk might occur when
>     evidence that the jury should not consider against a
>     defendant and that would not be admissible if a
>     defendant were tried alone is admitted against a
>     codefendant.  For example, evidence of a codefendant's
>     wrongdoing in some circumstances erroneously could lead
>     a jury to conclude that a defendant was guilty.  When
>     many defendants are tried together in a complex case
>     and they have markedly different degrees of
>     culpability, this risk of prejudice is heightened.
>     Evidence that is probative of a defendant's guilt but
>     technically admissible only against a codefendant also
>     might present a risk of prejudice.  Conversely, a
>     defendant might suffer prejudice if essential
>     exculpatory evidence that would be available to a
>     defendant tried alone were unavailable in a joint
>     trial.  The risk of prejudice will vary with the facts
>     in each case, and district courts may find prejudice in
>     situations not discussed here.  When the risk of
>     prejudice is high, a district court is more likely to
>     determine that separate trials are necessary, but, . .
>     . less drastic measures, such as limiting instructions,
>     often will suffice to cure any risk of prejudice.

Zafiro v. United States, 506 U.S. 534, 539 (1993) (internal citations omitted).

The discussion above indicates that Petitioner is entitled to habeas relief only if the state court's decision to deny his motion for severance was so prejudicial that it denied him his right to a fair trial.[1]

In its review of the claim, the Superior Court held as follows.

---

1. It is noted that under Rule 1127(A)(1)(a) of the Pennsylvania Rules of Criminal Procedure, separate offenses may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion.  Under Pa. R. Crim. P. 1128, a trial court may order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

> Severance may be proper where a defendant can show that he will be prejudiced by a joint trial. The fact that hostility exists between the co-defendants or that one defendant may try to save himself at the expense of the other constitutes insufficient grounds for severance. The determination of whether prejudice would result is left to the discretion of the trial court to balance the government's inconvenience and expense in separate trials against the defendant's prejudice in a joint trial. The burden is on the defendant to show prejudice, and the prejudice must be real, not fanciful. Mere inconsistency in defenses [is] insufficient to denote potential prejudice.
>
> Interpreting these rules, we find no error in the trial court's refusal to grant severance. Appellant and co-defendant Brown were charged with the same crimes, which stemmed from the same criminal occurrence.
>
> Appellant contends that his alibi defense is antagonistic to co-defendant Brown's statement that Appellant was the "shooter." We note that these defenses are not so inconsistent so as to warrant separate trials. Mere finger-pointing alone, the effort to exculpate oneself by implicating another, is insufficient to warrant a separate trial. Co-defendant Brown's statement implicating Appellant does not give rise to the need for separate trials. Additionally, co-defendant Brown did not testify that Appellant shot Charles Allen or pistol-whipped Cheyenne Allen. The trial court denied co-defendant's attempt to admit this statement into evidence, via the testimony of his father. Since this evidence was never admitted to the jury, Appellant was never prejudiced.

Sup. Ct. Mem. pp. 3-5 (Commw. Ex. 11) (citations and footnote omitted).

The state court's decision that Petitioner had not demonstrated sufficient prejudice to justify a severance is not contrary to Supreme Court precedent. *See* Zafiro, 506 U.S. at 539 (holding that joint trials promote efficiency and serve the interest of justice and that mutually antagonistic defenses did

not automatically mandate severance). Moreover, Petitioner cannot show that the trial court's decision denying his severance motion had a substantial or injurious effect on his guilty verdict as the evidence of his guilt was substantial. Consequently, he has not demonstrated that he is entitled to relief with respect to this claim.

    F.   <u>Illegal Arrest Warrant</u>

Petitioner's third claim is that he was convicted "due to evidence seized under an illegal arrest warrant issued by a deputy coroner of Allegheny County." In Pennsylvania, in cases of violent or suspicious death, a coroner's inquest may be held in lieu of a preliminary hearing at which the coroner or his properly authorized designee may act as committing magistrate or issuing authority. *See* <u>Commonwealth v. Prosdocimo</u>, 331 Pa. Super. 51, 52, 479 A.2d 1073, 1174 (1984). *See also* <u>Commonwealth v. Smouse</u>, 406 Pa.Super. 369, 594 A.2d 666 (1991) (holding that in cases involving either violent or suspicious deaths, the coroner or his authorized designee may issue and sign criminal complaints). Thus, there is no basis upon which to complain concerning the issuance of the arrest warrant. Consequently, this claim is without merit.

G.   <u>Certificate of Appealability</u>

The Antiterrorism Act included several major reforms to the federal habeas corpus laws.  Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

Petitioner has not made any showing that he was denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

III. <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the

objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

              Respectfully submitted,

              /s/ Amy Reynolds Hay
              AMY REYNOLDS HAY
              United States Magistrate Judge

Dated: 22 November, 2006

cc: Joy Flowers Conti
   United States District Judge

   Darnell Johnson, DS-6104
   SCI Forest
   PO Box 945
   Marienville, PA 16239-0945

   Paul R. Scholle
   Assistant District Attorney
   Office of the District Attorney
   401 Allegheny County Courthouse
   Pittsburgh, PA 15219